UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. |
| | § | 3:10-CR-0029-B-1 |
| ROBERT ROYCE JENSEN, JR., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Robert Royce Jensen, Jr.'s Second Motion for Reconsideration (Doc. 48). For the reasons that follow, the motion is **DENIED**.

## I.

## BACKGROUND

On February 18, 2010, Mr. Jensen was charged by information and pleaded guilty to one count of receiving child pornography. Doc. 1, Information; Doc. 3, Plea Agreement.[1] On January 31, 2011, the Court sentenced Mr. Jensen on this count to 170 months of imprisonment with a five-year term of supervised release. Doc. 27, J., 2–3. Mr. Jensen's total offense level after objections was thirty-four, due to the volume of images he possessed, their offensive nature, the ages of the children depicted in them, and his sharing of the images. Doc. 43, Gov't's Resp., 3. Mr. Jensen has served approximately 125 months, almost seventy-four percent, of his 170-month sentence. Doc. 48, Def.'s

---

[1] Mr. Jensen entered into an amended plea agreement on March 11, 2010. *See* Doc. 13, Am. Plea Agreement.

-1-

Second Mot. for Recons., 7. His projected release date is currently February 20, 2023.[2]

On June 8, 2020, Mr. Jensen filed a motion for compassionate release (Doc. 41) on the basis that he suffers from serious underlying medical conditions that place him at a heightened risk for severe illness or death should he contract COVID-19. Doc. 41, Def.'s Mot. for Compassionate Release, 5–6. Particularly, Mr. Jensen stated that he is seventy-two years old and suffers from chronic obstructive pulmonary disease (COPD), hypertension, and deep-vein thrombosis. *Id.* at 5. The Court denied Mr. Jensen's motion on June 24, 2020, on the grounds that he did not demonstrate "extraordinary and compelling reasons to warrant a sentence reduction." Doc. 45, Mem. Op. & Order, 4. While the Court "d[id] not discount that Mr. Jensen's age and preexisting conditions place him at a heightened risk of developing a severe illness if he contracts COVID-19," it noted that the Medical Center for Federal Prisoners (MCFP) Springfield, where Mr. Jensen resides, had only one case of COVID-19 at the time. *Id.* at 5. It further explained that generalized "complaints about the BOP's management of COVID-19 do not show that the BOP has failed to adequately control the spread of the virus at [Mr. Jensen's] facility." *Id.* Finally, the Court noted that Mr. Jensen failed to provide, in support of his motion, sufficient documentation of his asserted medical conditions. *Id.* at 6.

On August 11, 2020, Mr. Jensen filed his first motion for reconsideration (Doc. 46). In it, he reiterated that his "age and pre-existing health conditions" pose a risk for "severe disease or death from COVID[-19]." Doc. 46, Mot. for Recons., 4. He provided copies of his BOP medical records to substantiate the conditions alleged in his motion for compassionate release and pointed out that

---

[2] The Bureau of Prisons' (BOP) inmate locator may be accessed at https://www.bop.gov/inmateloc/.

he has the following additional medical conditions: "four leg clots, a pulmonary embolism, a closed head injury, varicose veins with complications, cellulitis, dermatitis, pre-diabetes, [and] shortness of breath on at least [three] separate occasions[.]" *Id.* Further, Mr. Jensen again urged the Court to consider the BOP's alleged mismanagement of the spread of the virus and the potential for MCFP Springfield to "repeat[] what happened at FCI Seagoville, FCI Oakdale, and many others." *Id.* at 7.

But the Court again found that Mr. Jensen had failed to demonstrate extraordinary and compelling reasons warranting release and that the § 3553(a) factors weighed against release. Doc. 47, Mem. Op. & Order, 3. In particular, the Court noted that with only four active cases of COVID-19 at his facility, he had not shown that "the BOP has failed to adequately control the spread of the virus at his facility." *Id.* at 4. Further, without discounting that Mr. Jensen's age and some of his documented medical conditions place him at a heightened risk of developing severe illness if he contracts COVID-19, the Court found that Mr. Jensen's medical conditions appeared under control and well-managed. *Id.* at 5–6. Finally, the Court discussed the volume and the particularly heinous nature of the images Mr. Jensen possessed and found that the portion of his sentence he had served to date did not adequately reflect the seriousness of his offense. *Id.* at 6.

On October 23, 2020, Mr. Jensen filed the motion now before the Court, his second motion for reconsideration (Doc. 48). This time, Mr. Jensen points to an increase in COVID-19 cases in his facility and states that "[t]he very conditions the Court demands now exist." Doc. 48, Second Mot. for Recons., 4. Mr. Jensen notes that "[s]ixty-nine inmates and counting have been infected" at MCFP Springfield since he filed his last motion for reconsideration, and "[a]pproximately 20 inmates fell ill within one day." *Id.* at 6. It is his position that this demonstrates MCFP Springfield is unable to control the spread of COVID-19. *See id.* And it is "[t]his change in circumstances [that forms]

the basis of Jensen's current Motion." *Id.* at 4.

The Government filed a response (Doc. 50) in opposition to Mr. Jensen's motion on November 2, 2020. Because Mr. Jensen has still not demonstrated extraordinary and compelling reasons warranting his release, and because the § 3553(a) factors weigh against his release, his motion is **DENIED**.

## II.

## LEGAL STANDARD

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (footnote omitted) (quoting § 3582(c)(1)(A)(i)). The Court's decision must also be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

## III.

## ANALYSIS

A.   *Mr. Jensen Has Not Demonstrated Extraordinary and Compelling Reasons Warranting Release.*

The change in circumstances that Mr. Jensen cites—namely, the rise in COVID-19 cases at his facility since his last motion—does not constitute an extraordinary and compelling reason warranting release. "The policy statement applicable to compassionate release—[the United States Sentencing Guidelines (U.S.S.G.)] § 1B1.13—'sets forth three circumstances that are considered

extraordinary and compelling reasons.'" *United States v. Delgado*, 2020 WL 2542624, at *2 (N.D. Tex. May 19, 2020) (quoting *United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020)); *see also* U.S.S.G. § 1B1.13(1)(A). "Among these are the 'medical condition of the defendant,' including where the defendant is 'suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *Muniz*, 2020 WL 1540325, at *1 (quoting U.S.S.G. § 1B1.13 cmt. n.1). Additionally, "[t]he policy statement . . . requires that the defendant not pose a danger to the safety of the community." *Id.*

The basis of Mr. Jensen's motion is that since the Court last considered his compassionate release, COVID-19 has "run[ ] 'rampant'" in his facility. Doc. 48, Second Mot. for Recons., 4. Mr. Jensen states that the Court's prior order "demanded evidence that 'the BOP [] failed to adequately control the spread of the virus at *his* facility'" and that such evidence now exists. *Id.* (quoting Doc. 45, Mem. Op. & Order, 5 (alterations and emphasis are Mr. Jensen's)). Moreover, Mr. Jensen submits that "his conditions [are not] any less real or threatening" simply because they are under control or managed with medication. *Id.* at 6.

The Court recognizes that the number of COVID-19 cases has risen at MCFP Springfield since the Court last considered Mr. Jensen for compassionate release.[3] But Mr. Jensen's argument fails to acknowledge that the Court explicitly "decline[d] to find extraordinary circumstances absent *specific* evidence that MCFP Springfield is not taking proper precautions to curb the spread of the virus." Doc. 45, Mem. Op. & Order, 5 (emphasis added). Mr. Jensen does not argue that MCFP

---

[3] As of November 3, 2020, there are 160 inmates at MCFP Springfield with COVID-19. The BOP's COVID-19 statistics by facility may be accessed on the BOP's website, https://www.bop.gov/coronavirus/.

-5-

Springfield is failing to take proper precautions. And, that the number of COVID-19 cases has risen at MCFP Springfield in a short time does not necessarily mean that it is not taking proper precautions. Indeed, Mr. Jensen acknowledges that "Missouri as a whole has seen a steady increase of cases since August and reports a 35% increase in positive cases and a 138% increase i[n] COVID deaths in" recent days. Doc. 48, Second Mot. for Recons., 5 (citation omitted).

Nor is the Court convinced that Mr. Jensen's medical conditions constitute extraordinary and compelling reasons warranting release. As the Court explained in its order on Mr. Jensen's first motion for reconsideration, Mr. Jensen's conditions appear under control and managed by medication. Doc. 47, Mem. Op. & Order, 5–6. Mr. Jensen provides the Court with no new medical records indicating that has changed, and, in fact, Mr. Jensen concedes that his conditions "are not causing present discomfort[.]" Doc. 48, Second Mot. for Recons., 6. Further, Mr. Jensen makes no argument that he is not receiving proper care at MCFP Springfield; there is nothing before the Court that indicates MCFP Springfield is ill-equipped to care for Mr. Jensen even should he contract COVID-19. To the contrary, MCFP Springfield is a medical facility. The Court does not agree with Mr. Jensen that his "risk of severe complications or death from COVID combined with his advanced age, is the epitome of an extraordinary and compelling circumstance," *id.* at 7. *See* U.S.S.G. § 1B1.13 cmt. n.1 (noting that extraordinary and compelling circumstances include a "serious physical or medical condition" or "deteriorating physical . . . health because of the aging process, *that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility* and from which he or she is not expected to recover" (emphasis added)).

Again, the Court does not discount that Mr. Jensen's age and some of his preexisting conditions place him at a heightened risk of developing a severe illness if he contracts COVID-19.

Nonetheless, the Court finds that Mr. Jensen's current medical state is not an extraordinary and compelling circumstance warranting release.

B.   *The Section 3553(a) Factors Weigh Against Release.*

Even if Mr. Jensen's medical condition constituted an extraordinary and compelling reason warranting release, the Court must consider the sentencing factors set forth in § 3553(a) to the extent they are applicable. And these factors still weigh against Mr. Jensen's release. As the Court explained in its order on Mr. Jensen's first motion for reconsideration:

> Mr. Jensen was convicted of receipt of child pornography. The Government seized over 600 still images and videos depicting prepubescent minors engaged in illicit sex acts. In its response to Mr. Jensen's compassionate release motion, the Government describes the particularly heinous nature of the images seized from Mr. Jensen's devices, and the Court will not recount it here. Though Mr. Jensen has served approximately seventy-two percent of his term, the Court determines that the 123 months he has served thus far do not adequately reflect the seriousness of his offense given its "nature and circumstances." Nor would a sentence reduction "provide just punishment" to Mr. Jensen, "promote respect for the law," or "afford adequate deterrence." Though Mr. Jensen argues that he is no longer a danger to the public, the Court finds that, on balance, the § 3553(a) factors weigh against his release.

Doc. 47, Mem. Op. & Order, 6–7 (citations omitted).

Now, Mr. Jensen has served 125 months, or approximately seventy-four percent of his sentence. But the Court's analysis of the § 3553(a) factors does not change. In fact, though he has participated in drug treatment and drug education, Mr. Jensen apparently has not undergone sex-offender counseling, treatment, or education. Doc. 50, Gov't's Resp., 1; Doc. 48-3, Program Review, 1–5; § 3553(a)(2)(D) (requiring sentencing courts to consider the need for the sentence to provide the defendant with needed educational training and correctional treatment). The § 3553(a) factors weigh against release.

The Court rejects Mr. Jensen's argument that "the Court's decision to base its conclusion on

the heinous nature of his offense effectively repeals the First Step Act." Doc. 48, Second Mot. for Recons., 8. It is Mr. Jensen's position that "under the Court's logic, [his] offense categorically precludes release[, and that] is not in keeping with what Congress expressed through the First Step Act." *Id.* First, the Court did not "base its conclusion" solely on the § 3553(a) factors in deciding Mr. Jensen's first motion for reconsideration. Rather, the Court concluded *both* that he had not demonstrated extraordinary and compelling reasons warranting his release *and* that the § 3553(a) factors weighed against release. Doc. 47, Mem. Op. & Order 3–7.  Second, the Court has not held, and does not hold today, that Mr. Jensen—or anyone who has committed Mr. Jensen's offense—is categorically ineligible for compassionate release. To the contrary, the Court is aware of its obligation to "consider every prisoner individually and [to] be cautious about making blanket pronouncements that categories of prisoners" do or do not qualify for compassionate release. *Delgado*, 2020 WL 2542624, at *3. Indeed, the Court considers compassionate release to be an individualized inquiry based on the confluence of numerous factors.

Nor does the Court's holding have the practical effect of categorically denying compassionate release for Mr. Jensen based on his offense. As the Court has explained, Mr. Jensen's current medical condition does not rise to the level of extraordinary and compelling, being that it is well-controlled and managed with medication. But the Court has never foreclosed that Mr. Jensen's condition *could* deteriorate such that Mr. Jensen is "substantially diminishe[d in his] ability . . . to provide self-care within the environment of a correctional facility[.]" U.S.S.G. § 1B1.13 cmt. n.1. Moreover, the Court has found that the portion of Mr. Jensen's sentence that he has served thus far does not adequately reflect the seriousness of his offense, "provide just punishment" to Mr. Jensen, "promote respect for the law," or "afford adequate deterrence." Doc. 47, Mem. Op. & Order, 6–7. But one

quarter of Mr. Jensen's sentence remains to be served. The Court has not foreclosed that it *could* find in the future that, based on the sentence served and other circumstances, the § 3553(a) factors permit Mr. Jensen's release. But as stated, today, those factors weigh against release.

## IV.

## CONCLUSION

For the reasons stated, Mr. Jensen's Second Motion for Reconsideration (Doc. 48) is **DENIED.**

**SO ORDERED.**

**SIGNED: November 5, 2020.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE